# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:10cv214

ROBERT D. GADDY, JR.,      )
                                      )

      Plaintiff,          )
                                      )

v.                              )       **MEMORANDUM AND**
                                      )       **RECOMMENDATION**

W. M. YELTON, in his individual and   )
official capacity; DOUG SHEEHAN, in   )
his individual and official capacity;   )
NICHOLAS RYAN MITCHELL, in his   )
individual and official capacity; ERVIN   )
HUNTER, in his individual and official   )
capacity; JIMMY STOVER, in his   )
individual and official capacity; and   )
THE CITY OF ASHEVILLE,   )
                                        )

      Defendants.       )
_____ )

Pending before the Court is Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings [#21]. Plaintiff brought this action against the City of Asheville (the "City") and a number of its police officers in their individual and official capacities. The Amended Complaint asserts federal claims pursuant to 42 U.S.C. § 1983, a state constitutional claim brought pursuant to the North Carolina Constitution, and several state law torts. These claims arise out of several incidents between Plaintiff and the officers, as well as Plaintiff's subsequent banning by the

Housing Authority of the City of Asheville (the "Housing Authority") from entering onto the properties it manages. Defendants move for judgment on the pleadings on the official capacity state law claims and move to dismiss the Section 1983 municipal liability claims against the City and all the claims brought pursuant to the North Carolina Constitution. The Court **RECOMMENDS** that the District Court **GRANT** Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings [#21].

## I. Background

### A. The Parties to this Dispute

Plaintiff is a resident of Buncombe County, North Carolina and has spent most of his life living in his grandmother's house in Asheville. (Pl.'s Am. Compl. ¶¶ 3, 11.) Defendants W.M. Yelton, Dough Sheehan, Nicholas Mitchell, Ervin Hunter, and Jimmy Stover (collectively, the "Individual Defendants") were all employees of the City of Asheville Police Department during the time frame relevant to this dispute. (Id. ¶¶ 4-8.) Plaintiff brought this action against the Individual Defendants in their individual and official capacities. (Id.) Plaintiff also named the City of Asheville as a defendant to this action because the Individual Defendants were acting as agents of the City within the scope of their employment when the alleged wrongful acts occurred. (Id. ¶ 9.)

### B. The October 27, 2008, Incident

The crux of this dispute arises out of an incident involving Plaintiff, Sergeant Yelton, and at least two other unidentified officers. (Id. ¶¶ 29, 34.) At approximately 8:00 p.m. on October 27, 2008, Plaintiff approached the front door of an acquaintance's house in Asheville. (Id. ¶ 27.) As he was approaching the door, someone called out "Robert." (Id. ¶ 28.) Plaintiff then saw Sergeant Yelton, who approached him and asked for identification. (Id. ¶ 29.) After looking at Plaintiff's driver's license, Sergeant Yelton stated that he thought he had a warrant for his arrest, grabbed Plaintiff, and placed him in handcuffs with his hands behind his back. (Id. ¶¶ 30-31.) Plaintiff did not resist. (Id. ¶ 32.)

As Sergeant Yelton was walking Plaintiff away from the house, Plaintiff felt his left cuff come free. (Id. ¶¶ 33-34.) Sergeant Yelton then yelled an obscenity at Plaintiff, and Plaintiff felt a blow to the right side of his head. (Id. ¶ 34.) Sergeant Yelton and at lest two other uniformed officers then began kicking, punching, and beating Plaintiff with a baton. (Id.) At some point, Sergeant Yelton started choking Plaintiff and yelling at him to stop breathing. (Id. ¶ 35.) When Plaintiff exclaimed that he could not breathe, one of the other officers sprayed mace in his face. (Id.)

Subsequently, an ambulance arrived and transported Plaintiff to the hospital, where he received treatment for the injuries sustained during this altercation, including

having a chest tube inserted to repair a collapsed lung.  (Id. ¶¶ 1, 37-38.)  While he was being transported to the hospital, the officers charged Plaintiff with simple assault, trespass, resisting a public officer, and assault on a government official. (Id. ¶ 39.)    After Plaintiff was released from the hospital, his wife filed a written complaint with the Asheville Police Department. (Id. ¶ 42.)  Although the Asheville Police Department conducted an internal investigation into the incident, it exonerated the officers.  (Id. ¶ 43.)

In early 2010, Plaintiff was acquitted of all charges stemming from the October 27, 2008, incident.  (Id. ¶¶ 53, 55.)  Plaintiff contends that this altercation and the subsequent criminal prosecution stemmed from a personal animosity between Plaintiff and the Individual Defendants.  (Id. ¶ 54.)

## C.    The Prior Incidents Between Plaintiff and the Individual Defendants

In support of his claim that the October 27, 2008, altercation and the subsequent criminal prosecution stemmed from personal animosity between the parties, Plaintiff points to several incidents that took place in the months leading up to the altercation. In March 2008, Officer Stover's grandmother, Maxine Fontane, asked Plaintiff's grandmother if she could store a vehicle on the property where Plaintiff was staying. (Id. ¶¶ 11-12, 15.)  Ms. Fontane also told Plaintiff that he could sell the car if he could get at least $3000 for the vehicle.  (Id. ¶ 12.)  Plaintiff then found a prospective buyer

who started making repairs to the vehicle prior to purchasing the car. (Id. ¶ 13.) Confusion over possession and ownership of the vehicle ensued, and Plaintiff was charged with obtaining property by false pretenses. (Id. ¶¶ 13-16.) These charged were later dismissed. (Id. ¶ 17.)

Several months later, Plaintiff was driving a moped with his son as a passenger. (Id. ¶ 18.) Officer Stover, who was later joined by Officer Hunter, pulled Plaintiff over. (Id. ¶¶ 18-19.) Officer Hunter told Plaintiff that they pulled him over because he "shot the bird" at him; Plaintiff denied making this gesture. (Id. ¶¶ 20-21.) Sergeant Yelton later appeared on the scene and stood in the background observing the situation. (Id. ¶ 24.) Officer Hunter wrote Plaintiff a citation for disorderly conduct, but Plaintiff was acquitted of the charges at trial. (Id. ¶¶ 25-26.)

## D. Plaintiff's Three Year Ban from Housing Authority Properties

After the October 27, 2008, incident, Plaintiff received a letter from the City banning him from all of the properties managed by the Housing Authority for a period of three years. (Id. ¶ 46.) Plaintiff contends that he was banned from these properties as a result of information provided to the City by the Individual Defendants. (Id. ¶ 47.) He further contends that the Individual Defendants conspired to get him placed on the banned list by the City. (Id. ¶ 45.) This action ensued.

## II.    Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  Nor will mere labels and legal conclusions suffice.  Id.  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. ____, 129 S. Ct. 1937, 1949 (2009).

The complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ____, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that the defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

Courts review a motion for judgment on the pleadings brought pursuant to Rule 12(c) under the same standard as a motion to dismiss made pursuant to Rule 12(b). Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405-6 (4th Cir. 2002).

### III. Analysis

### A. The Official Capacity Section 1983 Claims Against the Individual Defendants

Plaintiff brought Section 1983 claims against the Individual Defendants in both

their official and individual capacities.[1] The Section 1983 claims brought against the Individual Defendants in their official capacities, however, are duplicative of the claims brought against the City and are subject to dismissal. See Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n.13 (4th Cir. 2006) (holding that official capacity  Section 1983 claims against university administrators were duplicative of claims against the university's Board of Governors and subject to dismissal); Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding that official capacity Section 1983 claims against school superintendent were duplicative of the claims against the school board and subject to dismissal.).  Accordingly, the Court recommends that the District Court **DISMISS** the Section 1983 official capacity claims brought against the Individual Defendants.

## B.    The Section 1983 Claims Against the City

In order to hold a municipality liable for a constitutional violation pursuant to Section 1983, a plaintiff must demonstrate that the violation was caused by an official custom or policy of the municipality.  Martin, 355 F.3d at 782; Walker v. Prince George's Cnty., MD, 575 F.3d 426, 431 (4th Cir. 2009).  "[A] municipality cannot be held liable simply for employing a tortfeasor."  Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000).  As the United States Court of Appeals

---

[1] Defendants do not move to dismiss the Section 1983 claims brought against the Individual Defendants in their individual capacities.

for the Fourth Circuit explained in <u>Riddick</u>:

> Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

<u>Riddick</u>, 238 F.3d at 523 (quoting <u>Pembaur v. City of Cincinnati</u> 475 U.S. 469, 479, 106 S. Ct. 1292, (1986)); <u>see also</u> <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1396-87 (4th Cir. 1987).

Although in the rare case municipal policymakers may adopt an official policy directly authorizing unconstitutional police conduct that is itself unconstitutional, a plaintiff will usually have to establish municipal liability by demonstrating something other than direct authorization by policymakers. <u>See</u> <u>Spell</u>, 824 F.2d at 1388-89. Accordingly, the Fourth Circuit has recognized two basic theories for imposing liability on a municipality where "fault and causation cannot be laid to a municipal policy 'itself unconstitutional.'" <u>Id.</u> at 1389. First, a plaintiff can establish liability by demonstrating a deficient program of police training and supervision that results in a constitutional violation committed by untrained or improperly trained police officers. <u>Id.</u> Second, a plaintiff can demonstrate an "irresponsible failure by municipal policymakers to put a stop to or correct a widespread pattern of unconstitutional

conduct by police officers of which the specific violation is simply an example." Id. The requirements for establishing either of these theories of liability based on police misconduct are necessarily stringent in order to avoid inadvertently attaching a form of vicarious liability to the municipality. Id. at 1391; Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

Here, Plaintiff does not allege that the City policymakers adopted an official policy condoning or authorizing the alleged unconstitutional actions by the Individual Defendants that caused his injuries. Instead, Plaintiff alleges that the City failed to train its police officers in "methods and approaches designed to prevent the use of excessive force and to promote the protection of its citizen's exercise of first amendment privileges. . . ." (Pl.'s Am. Compl. ¶¶ 59, 68.)[2]  In addition, Plaintiff alleges that the City maintained a policy or custom of allowing its police officers to act "as a roving band of thugs applying highly personalized standards of justice in settling perceived slights to their official status and authority . . . ." (Pl.'s Am. Compl. ¶¶ 58, 66.)  The Court will address both of these theories of recovery.

1.     The allegations that the City condoned a policy or custom of unconstitutional conduct by its police offers

_____

[2]  The numbered paragraphs in the Amended Complaint revert back to 49 after 59.  Thus, there are two paragraphs in the Amended Complaint numbered 49-59.  For purposes of ruling on Defendants' motion, the Court references the paragraphs in the proper numerical order.  For example, this Order cites the second paragraph numbered 49 as 60.

In order to set forth a Section 1983 claim against a municipality based on the theory that it condoned a custom or policy of unconstitutional conduct, a plaintiff must demonstrate actual or constructive knowledge of the existence of the custom or policy by responsible policymakers and that the policymakers acted with deliberate indifference or the specific intent not to correct or stop the custom or policy. Spell, 284 F.2d at 1391. "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these." Id. A close casual link must exist between the known but uncorrected custom and the specific constitutional violation. Id. Finally, a single constitutional violation cannot support a claim that the specific violation at issue resulted from a custom or policy condoned by the municipality. Id.

Plaintiff's allegations that the City condoned a policy or custom of allowing its police officers to violate the constitutional rights of citizens fail to state a claim for relief under Twombly and Iqbal. The Amended Complaint fails to set forth any factual allegations from which the Court can infer constructive knowledge on the part of a responsible policymaker of a widespread practice or custom of police officers to either use excessive force in violation of the Fourth Amendment to the United States Constitution or violate the rights of individuals to assemble under the First

Amendment.[3]  In fact, the only factual allegations of potential constitutional violations are the acts of the Individual Defendants that form the basis of Plaintiff's claims against them.

As the Fourth Circuit has made clear, a single constitutional violation such as Plaintiff alleges in the Amended Complaint is insufficient to state a claim against a municipality.  Spell, 824 F.2d at 1391.  Moreover, general allegations of police misconduct during the prior incidents involving Plaintiff are insufficient to state such a claim because there is no casual link between these incidents and the particular constitutional violations of which Plaintiff complains.  See generally Carter, 164 F.3d at 219 (holding that prior allegations of excessive force cannot support a claim for unlawful arrests or unreasonable searches or seizures, and generalized bad police conduct is insufficient to establish municipal liability under Section 1983). Accordingly, the factual allegations in the Amended Complaint do not state a claim for municipal liability against the City under Section 1983 for alleged violations of the Fourth or First Amendments based on the theory that the City condoned a custom of unconstitutional conduct by its officers.

---

[3]  Although Plaintiff alleges that his wife submitted a  written complaint to the Asheville Police Department detailing the alleged use of excessive force by its officers, this occurred after the alleged constitutional violation for which Plaintiff seeks to recover and did not inform the City of a custom of violations of the First Amendment by its officers.  (Pl.'s Am. Compl. ¶ 42.)

2.   The allegations that the City is liable under a theory of deficient training

A Section 1983 claim against a municipality based on improper police training requires that the particular training policy at issue be fairly attributable to a municipality.  Spell, 824 F.2d at 1389. "Such a training policy is fairly attributed to a municipality when it is designed, implemented, and its trainees supervised by municipal officials to whom the municipal governing body has effectively delegated final authority so to act." Id. at 1390.  In addition, the alleged deficiency in training must constitute deliberate indifference to or reckless disregard for a constitutional right of those individuals coming within the jurisdiction of the police force.  Semple, 195 F.3d at 713; Spell, 824 F.2d at 1390.  Moreover, the plaintiff must establish a close causal link between the alleged deficient training and the specific constitutional violation.  Spell, 824 F.2d at 1390. "Therefore, a plaintiff must point to a specific deficiency and not a general ineffectiveness of the training," that makes the specific constitutional violation almost bound to happen at some point.   Semple, 195 F.3d at 713; Carter, 164 F.3d at 218; Spell, 284 F.2d 1390.  Finally, proof of a single constitutional violation will not support a claim that the violation resulted from a municipal policy of deficient training.  Spell, 284 F.2d at 1391; Semple, 195 F.3d at 713-714.

Like Plaintiff's claim that the City is liable for condoning a policy or custom of

unconstitutional conduct by its officers, the allegations in the Amended Complaint fail to state a claim for relief under Section 1983 against the City based on a theory of deficient training. As a threshold matter, the factual allegations in the Amended Complaint fail to set forth a <u>specific</u> deficiency in a training policy that is fairly attributable to the City and makes violations of the Fourth and First Amendment by police officers bound to happen at some point. <u>See</u> <u>Semple</u>, 195 F.3d at 713; <u>Carter</u>, 164 F.3d at 218. Moreover, the Amended Complaint is devoid of allegations of other unconstitutional violations resulting from the City's alleged deficient training. As the Fourth Circuit has explained, proof of a single constitutional violation will not support a claim against a municipality for deficient training. <u>See</u> <u>Spell</u>, 824 F.2d at 1391; <u>Semple</u>, 195 F.3d at 713-14; <u>Carter</u>, 164 F.3d at 219. As previously discussed, the allegations of general misconduct by the Individual Defendants in pulling him over on his moped and charging him with criminal charges for the incident involving officer Stover's grandmother's vehicle are insufficient to support a claim against the City because these prior acts have no casual connection to Plaintiff's claims that the City is liable for the actions of the Individual Defendants pursuant to either the Fourth or First Amendment. <u>See</u> <u>generally</u> <u>Carter</u>, 164 F.3d at 219. Accordingly, the Court **RECOMMENDS** that the District Court **DISMISS** the Section 1983 claims against the City.

**C.     The North Carolina Tort Claims Brought Against the City and the Individual Defendants in their Official Capacities.**

Plaintiff also brought state law tort claims against the City and the Individual Defendants in their official capacity.  Specifically, Plaintiff alleges that the Individual Defendants are liable for negligence, gross negligence, "trespass by a public officer" (including false arrest, false imprisonment, and assault and battery), and malicious prosecution.  (Pl.'s Am. Compl. ¶¶ 71-95.)  Plaintiff contends that the City is liable under the principle of *resondeat superior* and ratification for the gross negligence of the Individual Defendants.  (Id. ¶ 74.)  Defendants contend that these claims are all barred by the doctrine of sovereign immunity.

The doctrine of sovereign or governmental immunity generally shields municipalities and their agents from being sued in their official capacity for torts committed during the course of performing a governmental function. Owen v. Haywood Cnty., 697 S.E.2d 357, 359 (N.C. Ct. App. 2010); Houpe v. City of Statesville, 497 S.E.2d 82, 87 (N.C. Ct. App. 1998).   Law enforcement, including the training and supervision of police offers, constitutes a government function.  See Clayton v. T.H. Branson, 570 S.E.2d 253, 257 (N.C. Ct. App. 2002); Houpe, 497 S.E.2d at 87.  "An officer acting in his official capacity shares the municipalities immunity or waiver." Clayton, 570 S.E.2d at 257.

A municipality may waive sovereign immunity by purchasing liability insurance. Owen, 497 S.E.2d at 87; Houpe, 497 S.E.2d at 87. The municipality, however, only waives immunity to the extent of coverage provided in the insurance policy. Owen, 497 S.E.2d at 87. "A plaintiff that has brought claims against a governmental entity and its employees acting in their official capacities must allege and prove that the officials have waived their sovereign immunity or otherwise consented to suit." Id.

It is undisputed that the City purchased a liability insurance policy, which Defendants attached to their Answer. This insurance policy contains an exclusionary provision entitled "North Carolina - Governmental Immunity Endorsement." (Ex. A to Defs.' Answer to Pl.'s Am. Compl. at A-19.) This Exclusion provides that:

> This policy is not intended by the Insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 115C-42, Sec. 153A-435 or Sec. 160A-485, as applicable, or any amendments thereof. Accordingly, subject to this policy and the Limits of Insurance shown on the Declarations Page, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

(Id.) Defendants contend that based on the clear language of this exclusion, they have not waived sovereign immunity because the policy excludes coverage for claims where sovereign immunity is a defense.

In Owen, the North Carolina Court of Appeals considered a substantially similar

exclusion to the one at issue.  <u>Owen</u>, 697 S.E.2d at 259.  The exclusion contained in the liability insurance policy for the sheriff's department stated that the insurance policy did not apply to "any claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina law."  <u>Id.</u>; <u>see also</u> <u>Patrick v. Wake Cnty. Dep't of Human Servs.</u>, 655 S.E.2d 920 (N.C. Ct. App. 2008) (construing similar exclusion); <u>Estate of Earley v. Haywood Cnty. Dep't of Soc. Servs.</u>, 694 S.E.2d 405 (N.C. Ct. App. 2010).  The Court of Appeals held that because the insurance policy specifically excluded from coverage any claim where the covered person is entitled to rely on the doctrine of sovereign immunity as a defense in an action, the sheriff's department had not waived sovereign immunity for any claims where it could rely on sovereign immunity as a defense to plaintiff's claims.  <u>Owen</u>, 697 S.E.2d at 260.

Although the Court of Appeals applied the doctrine of sovereign immunity in <u>Owen</u> to bar plaintiff's claims, it recognized the circular nature of the logic of its prior case law:

> We acknowledge the arguably circular nature of the logic employed in <u>Patrick</u>. The facts are that the legislature explicitly provided that governmental immunity is waived to the extent of insurance coverage, but the subject insurance contract eliminates any potential waiver by excluding from coverage claims that would be barred by sovereign immunity. Thus, the logic in <u>Patrick</u> boils down to: Defendant retains immunity because the policy doesn't cover his actions and the policy doesn't cover his actions because he explicitly retains immunity.

> Nonetheless in this case, as in <u>Patrick</u>, where the language of both the applicable statute and the exclusion clause in the insurance contract are clear, we must decline Plaintiff's invitation to implement "policy" in this matter. Any such policy implementation is best left to the wisdom of our legislature.

<u>Estate of Earley</u>, 694 S.E.2d at 409-410; <u>Owen</u>, 697 S.E.2d at 360.

The exclusionary provision in this case is materially indistinguishable from the provisions in <u>Owen</u>, <u>Patrick</u>, and <u>Estate of Early</u>. As Plaintiff acknowledges in his Response to Defendants' Motion to Dismiss, "the language of the liability insurance policy purchased by defendants is indistinguishable from the language of the insurance policy determined not to constitute a waiver of governmental liability in <u>Owen</u> . . . ." (Pl.'s Resp. Opp'n Def.'s Mot. Dismiss at p. 5.) The Court, therefore, is bound by the prior holdings of the North Carolina Court of Appeals, and Defendants are entitled to rely on the doctrine of sovereign immunity to shield them from suit on the official capacity state law claims. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion for Judgment on the Pleadings and **DISMISS** the North Carolina tort claims against the City and the Individual Defendants in their official capacities.

### D.    Plaintiff's Substantive Due Process Claim under the North Carolina Constitution

Plaintiff also asserted, in the alternative to his official capacity state law tort claims, a substantive due process claim under the North Carolina Constitution against

Defendants.  Specifically, Plaintiff alleges that the acts of the Individual Defendants violated his rights to due process as protected by Article I, §§ 1 and 19 of the North Carolina Constitution.  (Pl.'s Am. Compl. ¶ 98.)  Defendants contend that these claims are subject to dismissal because Plaintiff  has an adequate remedy under state law.

A plaintiff may pursue an action directly under the North Carolina Constitution only where the plaintiff lacks a remedy under state law to redress the alleged violations.  <u>Martin</u>, 355 F.3d at 789 (applying North Carolina law to bar constitutional claim where plaintiff had an adequate remedy at law for the alleged violations); <u>Copper v. Denlinger</u>, 688 S.E.2d 426, 428 (N.C. 2010) ("To assert a direct constitutional claim . . . for violation of his procedural due process rights, a plaintiff must allege that no adequate state remedy exists to provide relief for the injury."); <u>Corum v. Univ. of N.C.</u>, 413 S.E.2d 276, 782 (N.C. 1992). "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have a least the opportunity to enter the courthouse doors and present his claim." <u>Craig v. New Hanover Cnty., Bd. of Educ.</u>, 678 S.E.2d 351, 339-40 (N.C. 2009); <u>see</u> <u>also</u> <u>Copper</u>, 688 S.E.2d at 429.

For example, in <u>Craig</u> a mentally disabled student brought an action against the board of education and a middle school principal for their failure to protect him from sexual assault.  678 S.E.2d at 336-37.   The North Carolina Supreme Court held that the plaintiff could assert a direct constitutional claim because his official capacity

negligence claim was barred by the doctrine of sovereign immunity and the lower court had previously dismissed the individual capacity claim. Id. at 342. Allowing the plaintiff a direct constitutional claim was necessary to ensure redress for the alleged constitutional injury because he had no other avenue for addressing the alleged injury. Id.

Plaintiff contends that, like the plaintiff in Craig, he is left without an adequate remedy under state law once the Court applies the doctrine of sovereign immunity to this case. The doctrine of sovereign immunity, however, only bars Plaintiff's official capacity claims against the Individuals Defendants; Plaintiff may still assert his state law claims against the Individual Defendants in their individual capacities. Unlike the plaintiff in Craig, who was left with no remedy against the defendants to obtain relief for the alleged constitutional wrongs, Plaintiff has an adequate remedy under North Carolina law for the alleged injuries resulting from the actions of the Individual Defendants. See Glenn-Robinson v. Acker, 538 S.E.2d 601, 619 (N.C. Ct. App. 2000) (holding that plaintiff had an adequate remedy under North Carolina law for her alleged injury where the claims against defendant in his individual capacity survived); Johnson v. Causey, 701 S.E.2d 404 (N.C. Ct. App. 2010) (table decision) (same). Accordingly, the Court **RECOMMENDS** that the District Court **DISMISS** Count Six of the Amended Complaint.

## IV.  CONCLUSION

The Court **RECOMMENDS** that the District Court **GRANT** Defendants Motion to Dismiss and Motion for Judgment on the Pleadings [#21]. The Court **RECOMMENDS** that the District Court **DISMISS**:

 (1) the Section 1983 official capacity claims brought against the Individual Defendants;

 (2) the Section 1983 claims against the City of Asheville;

 (3) the North Carolina tort claims against the City and the Individual Defendants in their official capacities; and

 (4) Count Six of the Amended Complaint.

### Time for Objections

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same.  **Responses to the objections must be filed within fourteen (14) days of service of the objections.**  Failure to file objections to this Memorandum and Recommendation with the district court will

preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: April 22, 2011

Dennis L. Howell
United States Magistrate Judge