# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION

### CIVIL CASE NO. 1:10cv214

| | |
|---|---|
| **ROBERT D. GADDY, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| **W.M. YELTON, in his Individual and** ) | |
| **Official Capacity, DOUG SHEEHAN,** ) | |
| **in his Individual and Official** ) | |
| **Capacity, NICHOLAS RYAN** ) | |
| **MITCHELL, in his Individual and** ) | |
| **Official Capacity, ERVIN HUNTER,** ) | |
| **in his Individual and Official** ) | |
| **Capacity, JIMMY STOVER, in his** ) | |
| **Individual and Official Capacity, and** ) | |
| **THE CITY OF ASHEVILLE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to

Dismiss and for Judgment on the Pleadings [Doc. 21]; the Magistrate

Judge's Memorandum and Recommendation regarding the disposition of

such Motion [Doc. 28]; and the Plaintiff's Written Objections to the

Memorandum and Recommendation [Doc. 29].

# I.    PROCEDURAL BACKGROUND

The Plaintiff Robert D. Gaddy, Jr., brings this action against the Defendants W.M. Yelton, Doug Sheehan, Nicholas Ryan Mitchell, Ervin Hunter, and Jimmy Stover ("Individual Defendants") and the City of Asheville ("City"), asserting claims under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights to be free from unlawful seizure and excessive force, arising from Plaintiff's arrest on October 27, 2008, and for violation of his First Amendment rights to free speech, to travel, and to associate, arising from the Plaintiff being banned in April 2009 from City Housing Authority property for a period of three years.  The Plaintiff also asserts state law claims for negligence, gross negligence, trespass by a public officer, and malicious prosecution.  [Amended Complaint, Doc. 14 at 10-18].  All claims are asserted against the Individual Defendants in both their individual and official capacities.  [Id.].  To the extent that the Individual Defendants are entitled to immunity from the state law claims asserted, the Plaintiff alternatively pleads a claim under Article I, Sections 1 and 19 of the North Carolina Constitution for a violation of substantive due process.  [Id. at 18-19].

On January 27, 2011, the Defendants moved for judgment on the pleadings on the official capacity state law claims on the basis of governmental immunity. [Doc. 21]. They further moved to dismiss the § 1983 claims against the City and the Individual Defendants in their official capacities as well as the claim brought pursuant to the North Carolina Constitution against the Individual Defendants. [Doc. 21].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the Defendants' motions and to submit a recommendation regarding their disposition. On April 22, 2011, the Magistrate Judge entered a Memorandum and Recommendation in which he recommended that the Defendants' motions be granted. [Doc. 28]. Specifically, the Magistrate Judge recommended: (1) that the § 1983 claims brought against the Individual Defendants in their official capacities should be dismissed, as such claims are duplicative of the claims brought against the City [Id. at 7-8]; (2) that the § 1983 claims against the City should be dismissed because the Plaintiff had failed to allege a plausible claim for relief based on a theory of municipal policy or custom [Id. at 8-14]; (3) that the North Carolina tort claims brought against the City and the

Individual Defendants in their official capacities should be dismissed under the doctrine of governmental immunity [Id. at 15-18]; and (4) that the Plaintiff's substantive due process claim under the North Carolina Constitution should be dismissed because the Plaintiff has an adequate remedy under state law [Id. at 18-20].

The Plaintiff timely filed objections, challenging the Magistrate Judge's Recommendation that the § 1983 claims against the City and the substantive due process claim under the North Carolina Constitution should be dismissed.[1]  [Doc. 29].  The Defendants have responded, arguing that the Court should adopt the Recommendation in its entirety. [Doc. 30].

Having been fully briefed, this matter is ripe for review.

## II.    STANDARD OF REVIEW

### A.    Standard of Review Applicable to Objections to Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed

---

[1]The Plaintiff does not object to the recommended dismissal of the § 1983 claims against the Individual Defendants in their official capacities or the North Carolina tort claims against the Individual Defendants and the City on the grounds of governmental immunity. [See, Doc. 29 at 12].  Therefore, the recommendation of the Magistrate Judge will be adopted as to those claims, and they will be dismissed.

4

findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B.    Rule 12(b)(6) Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be

"plausible on its face," a plaintiff must demonstrate "more than a sheer

possibility that a defendant has acted unlawfully."  Iqbal, 129 S.Ct. at 1949.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth."  This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."

> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief,'" as required by Rule 8. ... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, code pleading regime of a prior era, ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly,

550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 129 S.Ct. at 1950)

(citations and internal quotation marks omitted).

In considering a motion for judgment on the pleadings, the Court

applies the same standard for motions made pursuant to Rule 12(b)(6).

Burbach Broadcasting Co. v. Elkins Radio Corp., 278 F.3d 401, 405-06

(4th Cir. 2002).

## III.    FACTUAL BACKGROUND

The Magistrate Judge summarized the relevant facts as alleged in

the Amended Complaint as follows:

> The crux of this dispute arises out of an incident
> involving Plaintiff, Sergeant Yelton, and at least two
> other unidentified officers.  At approximately 8:00 p.m.
> on October 27, 2008, Plaintiff approached the front
> door of an acquaintance's house in Asheville.  As he
> was approaching the door, someone called out
> "Robert."  Plaintiff then saw Sergeant Yelton, who
> approached him and asked for identification.  After
> looking at Plaintiff's driver's license, Sergeant Yelton
> stated that he thought he had a warrant for his arrest,
> grabbed Plaintiff, and placed him in handcuffs with his
> hands behind his back.  Plaintiff did not resist.
>
> As Sergeant Yelton was walking Plaintiff away from
> the house, Plaintiff felt his left cuff come free.
> Sergeant Yelton then yelled an obscenity at Plaintiff,
> and Plaintiff felt a blow to the right side of his head.
> Sergeant Yelton and at le[a]st two other uniformed

officers then began kicking, punching, and beating Plaintiff with a baton. At some point, Sergeant Yelton started choking Plaintiff and yelling at him to stop breathing. When Plaintiff exclaimed that he could not breathe, one of the other officers sprayed mace in his face.

Subsequently, an ambulance arrived and transported Plaintiff to the hospital, where he received treatment for the injuries sustained during this altercation, including having a chest tube inserted to repair a collapsed lung. While he was being transported to the hospital, the officers charged Plaintiff with simple assault, trespass, resisting a public officer, and assault on a government official. After Plaintiff was released from the hospital, his wife filed a written complaint with the Asheville Police Department. Although the Asheville Police Department conducted an internal investigation into the incident, it exonerated the officers.

In early 2010, Plaintiff was acquitted of all charges stemming from the October 27, 2008 incident. Plaintiff contends that this altercation and the subsequent criminal prosecution stemmed from a personal animosity between Plaintiff and the Individual Defendants.

In support of his claim that the October 27, 2008, altercation and the subsequent criminal prosecution stemmed from personal animosity between the parties, Plaintiff points to several incidents that took place in the months leading up to the altercation. In March 2008, Officer Stover's grandmother, Maxine Fontane, asked Plaintiff's grandmother if she could store a vehicle on the property where Plaintiff was staying. Ms. Fontane also told Plaintiff that he could sell the car if he could get at least $3000 for the

vehicle. Plaintiff then found a prospective buyer who started making repairs to the vehicle prior to purchasing the car. Confusion over possession and ownership of the vehicle ensued, and Plaintiff was charged with obtaining property by false pretenses. These charge[s] were later dismissed.

Several months later, Plaintiff was driving a moped with his son as a passenger. Officer Stover, who was later joined by Officer Hunter, pulled Plaintiff over. Officer Hunter told Plaintiff that they pulled him over because he "shot the bird" at him; Plaintiff denied making this gesture. Sergeant Yelton later appeared on the scene and stood in the background observing the situation. Officer Hunter wrote Plaintiff a citation for disorderly conduct, but Plaintiff was acquitted of the charges at trial.

After the October 27, 2008 incident, Plaintiff received a letter from the City banning him from all of the properties managed by the Housing Authority for a period of three years. Plaintiff contends that he was banned from these properties as a result of information provided to the City by the Individual Defendants. He further contends that the Individual Defendants conspired to get him placed on the banned list by the City. This action ensued.

[Doc. 28 at 3-5 (citations and headings omitted)].

The Plaintiff contends that in analyzing his claims, the Magistrate Judge took "a dismissive and reductionist view of the factual allegations made in the Amended Complaint." [Doc. 29 at 3]. The Plaintiff, however, does not point to any specific error made in the Magistrate Judge's

recitation of the alleged facts.  Absent any specific objections, the Court is not required to conduct a *de novo* review of the Magistrate Judge's factual summary.  Upon careful review, the Court finds that the Magistrate Judge's recitation of the relevant facts is correct.  Accordingly, the factual background as set forth in the Memorandum and Recommendation [Doc. 28 at 2-5] and incorporated herein is accepted.

## IV.    DISCUSSION

### A.    Pleading Requirements

As a preliminary matter, the Plaintiff argues that the Magistrate Judge improperly imposed "a heightened pleading standard" beyond that required by Rule 8 of the Federal Rules of Civil Procedure and by the Supreme Court in Twombly and Iqbal, supra.  [Doc. 29 at 2-3].

Contrary to the Plaintiff's argument, the Magistrate Judge's Memorandum and Recommendation does not impose any kind of heightened pleading standard on the Plaintiff.  Rather, the Magistrate Judge correctly analyzed whether the Amended Complaint contains "enough facts to state a claim to relief that is plausible on its face."  [Doc. 28 at 7 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. 1955)].  In so doing, the Magistrate Judge correctly noted that facial plausibility requires a

plaintiff to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" [Id. (quoting Iqbal, 129 S.Ct. at 1949)], and to set forth allegations that "move a plaintiff's claims from possible to plausible" [Id. (citing Twombly, 550 U.S. at 570, 127 S.Ct. 1955 and Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009)].

The Magistrate Judge correctly summarized the standard of review dictated by Rule 8 and the relevant Supreme Court precedent. The Plaintiff's objection to the pleading standard utilized by the Magistrate Judge therefore is overruled.

**B.    Municipal Liability**

Next, the Plaintiff contends that the Magistrate Judge erred in concluding that the Amended Complaint fails to state plausible claims for municipal liability under § 1983 for the violation of his Fourth Amendment and First Amendment rights.  [Doc. 29 at 3-7].

In order to succeed on a theory of municipal liability under § 1983, a plaintiff must show that "the municipality *itself* cause[d] the constitutional violation at issue."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).  A municipality cannot be held vicariously

liable under § 1983 for the actions of its employees under a theory of *respondeat superior*. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

A plaintiff may establish municipal liability by demonstrating the existence of an express policy that is inherently unconstitutional when enforced. City of Oklahoma City v. Tuttle, 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion). In the absence of an express policy, a plaintiff can establish municipal liability by demonstrating a condoned custom or usage, that is, a practice that is so "persistent and widespread and so permanent [and] so well-settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691, 98 S.Ct. 2018 (citation omitted). Alternatively, municipal liability may be established by evidence that a municipality failed to train its officers adequately, if such failure amounts to "deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388, 109 S.Ct. 1197.

### 1. "Condoned Custom" Theory

For liability to attach for an unconstitutional custom or usage, "(1) the municipality must have 'actual or constructive knowledge' of the custom

and usage by its responsible policymakers, and (2) there must be a failure by those policymakers, 'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage."

Randall v. Prince George's County, Md., 302 F.3d 188, 210 (4th Cir. 2002). A custom or usage cannot be established by proof of a single constitutional violation.  Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987) ("proof of a single violation . . . obviously cannot support an inference that the violation resulted from a municipally condoned custom of comparable practices").

        As the Fourth Circuit has explained,

> [C]onstructive knowledge . . . may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these.  Moreover, a sufficient causal connection between such a known but uncorrected custom or usage and a specific violation is established if occurrence of the specific violation was made reasonably probable by permitted continuation of the custom . . . . [T]he failure to correct the known practices must be such as to make the specific violation almost bound to happen, sooner or later.

Randall, 302 F.3d at 210-11 (citations and internal quotation marks omitted).

In the present case, Plaintiff argues that the officers engaged in a "campaign of harassment" against him which culminated in the October 2008 assault and the April 2009 banning of the Plaintiff from City Housing Authority property. Plaintiff contends that the two incidents which preceded the October 2008 assault -- the March 2008 arrest for obtaining property by false pretenses and the July 2008 arrest for disorderly conduct -- were sufficient to put the City on notice of its officers' unconstitutional behavior such that municipal liability should attach. [Doc. 29 at 3-7].

The prototypical "widespread practice" argument focuses on "the application of the policy to many different individuals." Phelan v. Cook County, 463 F.3d 773, 789 (7th Cir. 2006); see also Spell, 824 F.2d at 1393 (relying on testimony of several lay witnesses who "observed or directly experienced acts of brutality by city officers of the type charged to" the defendant). Here, Plaintiff makes no allegation that other individuals were subjected to excessive force or First Amendment violations by City officers. Rather, he seeks to establish the requisite "widespread practice" by citing the various actions taken against only him by the Individual Defendants as part of their alleged "campaign of harassment."

The Court agrees with the Magistrate Judge that the Plaintiff's factual allegations are insufficient to state a plausible claim of a "widespread" practice of unconstitutional conduct. As the Seventh Circuit Court of Appeals has stated:

> [T]he word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.

Phelan, 463 F.3d at 790. While the Plaintiff alleges that he was subjected to a "campaign of harassment" culminating in a brutal assault on October 2008 and his subsequent ban from City Housing Authority property in April 2009, Plaintiff has failed to allege any causal link between his prior encounters with the Defendants and the specific constitutional deprivations he alleges that he subsequently suffered. "[A] plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations to prove either that a municipality was indifferent to the risk of [his] specific injury or that it was the moving force behind [his] deprivation." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999); see also Phelan, 463 F.3d at 790 (dismissing § 1983 claim against county where plaintiff "failed to weave . . . separate

incidents [of sexual harassment and gender discrimination] into a cognizable policy").

For these reasons, the Court agrees with the Magistrate Judge that Plaintiff's general allegations of police misconduct during his prior arrests are insufficient to create the plausible inference that the officers' conduct was so "widespread and pervasive" and "permanent and well-settled" as to amount to a municipally-condoned custom or usage. Accordingly, the Court accepts that the Magistrate Judge's recommendation that the Plaintiff's § 1983 claims against the City arising under a theory of a condoned custom be dismissed.

### 2.    Deficient Training Theory

"The way in which a municipal police force is trained, including the design and implementation of training programs and the follow-up supervision of trainees, is necessarily a matter of 'policy' within the meaning of Monell." Spell, 824 F.2d at 1389. In order for a municipality to be liable under a deficient training theory, a plaintiff must establish deficiencies which "rise to at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within police force jurisdiction." Semple v. City of Moundsville, 195 F.3d 708, 713 (4th

Cir. 1999).  The plaintiff must identify a *specific* deficiency in the officers'

training; an allegation of general ineffectiveness is not sufficient.

See Spell, 824 F.2d at 1390.  "The deficiency also must make the

occurrence of the specific violation a 'reasonable probability rather than a

mere possibility' when the exigencies of police work are considered."

Semple, 195 F.3d at 713;  Spell, 824 F.2d 1390.  Thus, there must be a

"direct causal connection" between the specific deficiency identified and the

alleged constitutional injury.  Semple, 195 F.3d at 713.  As with a claim of a

municipally-condoned custom, proof of a single incident of unconstitutional

conduct is insufficient to prove the existence of a municipal "policy" of

deficient training.  Spell, 824 F.2d at 1391; see Tuttle, 471 U.S. at 823-24,

105 S.Ct. 2427.

Plaintiff alleges that in recommending dismissal of his deficient

training claims, the Magistrate Judge ignored his allegations that Sergeant

Yelton, a supervising officer, approved of and failed to correct the

misconduct of the officers who arrested Plaintiff during the July 2008 and

October 2008 incidents.  [Doc. 29 at 7].  These allegations, even if

assumed to be true, do not establish a deficient training policy on the part

of the City.  At best, these allegations establish that Sergeant Yelton (1)

supervised the July 2008 traffic stop during which Plaintiff's son was threatened by a police officer and (2) supervised and participated in the October 2008 assault on Plaintiff. Plaintiff does not allege Sergeant Yelton has final authority to act on behalf of the City. See Spell, 824 F.3d at 1390 (noting that "a training policy is fairly attributed to a municipality when it is designed, implemented, and its trainees supervised by municipal officials to whom the governing body has effectively delegated final authority so to act"). Merely identifying the highest-ranked officer present at the scene of an unlawful arrest does not give rise to a plausible inference of municipal liability. See White v. Town of Chapel Hill, 899 F. Supp. 1428, 1432 (M.D.N.C. 1995) (dismissing claim of municipal liability based on presence and decision-making of police chief at scene of alleged constitutional violation).

Plaintiff has failed to set forth sufficient facts to state a plausible claim for deficient training against the City under § 1983. As noted by the Magistrate Judge, Plaintiff has failed to identify any specific training deficiency that is "fairly attributable" to the City. See Spell, 824 F.2d at 1390. Furthermore, Plaintiff has failed to allege the requisite causal link

between any deficiency in the City's training and the constitutional deprivations alleged.  See id.

Accordingly, the Court accepts the Magistrate Judge's recommendation regarding the dismissal of these claims, and Plaintiff's objections are overruled.

### C.     Substantive Due Process Claim

Finally, the Plaintiff argues that the Magistrate Judge erred in concluding that Plaintiff's substantive due process claim under the North Carolina Constitution should be dismissed.  [Doc. 29 at 7-17].

A plaintiff may pursue an action directly under the North Carolina Constitution only where the plaintiff lacks a remedy under state law adequate to redress the alleged violation.  Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ., 363 N.C. 334, 338, 678 S.E.2d 351, 354 (2009); Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992).  "[T]o be considered adequate in redressing a constitutional wrong, a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim."  Copper ex rel. Copper v. Denlinger, 363 N.C. 784, 789, 688 S.E.2d 426, 429 (2010) (quoting Corum, 363 N.C. at 339-40, 678 S.E.2d at 355).

Here, the application of governmental immunity has not barred Plaintiff from "enter[ing] the courthouse doors." While Plaintiff's claims against the Individual Defendants in their official capacities have been dismissed, the Plaintiff's state law claims against these Defendants in their individual capacities remain viable. Under these circumstances, the Court cannot say that the inability to pursue a negligence claim against these Defendants in their official capacities deprives Plaintiff of an adequate remedy at state law for redressing his alleged injuries. See Glenn-Robinson v. Acker, 140 N.C. App. 606, 632, 538 S.E.2d 601, 619 (2000) (holding that presence of state law claims against officer in his individual capacity constitutes adequate remedy at state law), disc. rev. denied, 353 N.C. 372, 547 S.E.2d 811 (2001); Johnson v. Causey, No. COA09-1712, 2010 WL 4288511, at *10 (N.C. Ct. App. Nov. 2, 2010) (same). Accordingly, the Court accepts the Magistrate Judge's recommendation that Plaintiff's substantive due process claim under the North Carolina Constitution should be dismissed.

## V.    ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Written Objections to the Memorandum and Recommendation [Doc. 29] are **OVERRULED**, and the Magistrate Judge's Memorandum and Recommendation [Doc. 28] is **ACCEPTED**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss and for Judgment on the Pleadings [Doc. 21] is **GRANTED**, and the following claims set forth in the Plaintiff's Amended Complaint are hereby **DISMISSED**:

(1)    The claims brought pursuant to 42 U.S.C. § 1983 against Defendants Yelton, Sheehan, Mitchell, Hunter, and Stover in their official capacities;

(2)    The claims brought pursuant to 42 U.S.C. § 1983 against the City of Asheville;

(3)    The North Carolina tort claims of negligence, gross negligence, trespass by a public officer, and malicious prosecution brought against the City and the Individual Defendants in their official capacities; and

(4) The claim asserted in the Sixth Claim for Relief for deprivation of substantive due process in violation of the North Carolina Constitution.

This case shall proceed on the Plaintiff's § 1983 and state law tort claims against the Individual Defendants in their individual capacities.

**IT IS FURTHER ORDERED** that the parties shall conduct an Initial Attorneys' Conference within fourteen (14) days of this Order and file a Certificate of Initial Attorneys' Conference with the Court within seven (7) days thereafter.

**IT IS SO ORDERED.**

Signed: August 16, 2011

Martin Reidinger
United States District Judge